H. A. SIMPSON AND WIFE, ROSA PARKER SIMPSON v. RAY T. LEE AND WIFE, ISABELLE PARKER LEE AND T. H. LEE AND WIFE, MILDRED TURNER LEE

No. 7520SC264

(Filed 6 August 1975)

1. **Reference § 7— belated hearings and report — waiver of objection**

   Plaintiffs waived any right to object to the failure of the referee to conduct hearings and file his report within the time directed by the court by participating in hearings after the time for filing the report had passed.

2. **Trespass § 8— destruction of crops — damages**

   Damages allowable for the unlawful destruction of crops are based on the reasonable value of the crops destroyed at the time and place of their destruction; this value is determined by estimating the probable yield had the crop not been destroyed, calculating the value of that yield in the market, and deducting the value and amount of labor and expense which would have been required to mature, care for and market the crop.

3. **Trespass § 8— destruction of crops — damages — insufficient findings**

   Findings of the "total market value" of destroyed crops were insufficient to support an award of damages for destruction of the crops where it does not appear from the findings whether the crops were growing or mature and the findings do not disclose the basis for the determination of market value.

4. **Trespass § 8— wrongful removal of timber — damages — election**

   When timber is unlawfully cut the claimant is entitled either to the difference in fair market value of the land before and after the cutting or the market value of the timber at the time and place of its severance plus incidental damages caused in removal, whichever he elects.

5. **Trespass § 8— wrongful removal of timber — damages — insufficient findings**

   Finding of the "fair market value" of timber wrongfully cut was insufficient to support an award of damages for the timber where the finding does not disclose on what basis the damages were computed.

Simpson v. Lee

6. **Boundaries § 15— processioning proceeding — absence of surveyor's map**
　　Processioning proceeding is remanded for inclusion of a surveyor's map with the judgment in compliance with G.S. 38-3(c) where the court's judgment referred to a map described as "Defendants' Exhibit A" which contains distances and corners marked with letters but contains no courses or references to monuments.

APPEAL by plaintiffs from *Kivett, Judge.* Judgment entered on 12 November 1974 in Superior Court, ANSON County. Heard in the Court of Appeals 9 June 1975.

In his answer to the processioning petition the defendants allege that the dividing line between the lands of the parties has been established and counterclaimed to recover for destruction of crops and timber. The Clerk transferred the case to the Superior Court and a referee was subsequently appointed with instructions that he file his report by 11 September 1972. This deadline was later extended to 1 December 1972. The referee thereafter held six hearings in January, July, August and November of 1973 and in February of 1974 and filed his report on 2 October 1974. At each of the hearings, all parties were either present or represented by counsel. In his report the referee found that there was considerable evidence establishing that the boundary line contended for by defendants had been used as a boundary line between the parties in the past, but there was no evidence of any monuments along the boundary line proposed by the plaintiffs. The referee concluded that the true boundary line was that proposed by defendants which he described with reference to a map (Defendants' Exhibit A) as follows:

　　"The line which begins at point (A) at the mouth of Camp Branch on the Rocky River, as shown on Defendants' Exhibit A, and extends from that point in a generally westerly direction to points (B), (C), (D), (E), (F), and (I)."

The referee further, after hearing evidence offered by defendants relating to crop damage and the cutting of timber harvested by plaintiffs on defendants' land, found facts as follows:

　　"IV. Defendants were damaged by Plaintiffs' actions as follows:

　　(1) Damage to timber on September 8, 1971 on Burns Road, near Carpenter Road, in the amount of $105.30, total market value.

(2) Damage to oat crop, November 20, 1969, in the amount of $770.00 total market value.

(3) Damage to oat crop on March 18, 1970 in the amount of $1,100.00 total market value.

(4) Damage to oat crop on April 22, 1970, in the amount of $1,100 total market value.

(5) Damage to soy bean crop in 1971 in the amount of $2,000 total market value."

The court accepted the referee's report and adopted his findings of fact, conclusions of law and proposed judgment. From said judgment, plaintiffs appealed.

*Clark and Griffin by Richard S. Clark and Bobby H. Griffin for the plaintiffs.*

*No counsel contra.*

CLARK, Judge.

[1] Plaintiffs contest the validity of the referee's report on the grounds that under the court orders the referee had no authority to hold hearings and issue a report after 1 December 1972. As the record reveals, however, plaintiffs participated in six separate hearings after the deadline for filing the referee's report had passed. In some of the hearings plaintiffs actually testified, adduced additional evidence and conducted cross-examination of defendants' witnesses. At no point does it appear that plaintiffs ever objected to continuing with the reference or excepted to the report other than by assignment of error on this appeal.

In *Keith v. Silvia,* 233 N.C. 328, 64 S.E. 2d 178 (1951), all parties to a reference continued to participate in the reference after the day fixed for the final report. After the referee's report was filed adverse to the plaintiff, plaintiff attempted to have the referee removed for failing and refusing to file his report on time. The Court said, "[a]ny cause for objection that the referee failed to file the report as in said order directed was *waived.*" 233 N.C. at 331. (Emphasis added.) Therefore, we find that the plaintiffs, by continuing to participate in the reference, have waived any right to object to the failure of the referee to conduct the hearings and file his report within the

Simpson v. Lee

time directed by the court. See also *Andrews v. Jordan,* 205 N.C. 618, 172 S.E. 319 (1934).

[2, 3]  The plaintiffs assign as error the adoption by the trial court of the referee's findings of fact and conclusions of law with respect to the damages caused by plaintiffs' unlawful destruction of certain crops and timber on defendants' land contending that the findings of "total market value" are vague and uncertain and do not support the award of damages. In this State, damages allowable for the unlawful destruction of another's crops are based upon the reasonable value of the crops destroyed, presumably at the time and place of their destruction. See *Dixon v. Grand Lodge,* 174 N.C. 139, 93 S.E. 461 (1917). By' far the most widely accepted method of arriving at this value is "first, to estimate the probable yield had the crop not been destroyed; second, calculate the value of that yield in the market; and third, deduct the value and amount of labor and expense which . . . would have been required to mature, care for, and market the crop." Annot., 175 A.L.R. 159, § 12 (1948). In this case it does not appear from the findings of fact whether the crops were growing or mature, and there are no other findings which serve as a basis or support for the award of damages by the court.

[4, 5]  Similarly, the trial court adopted the referee's findings with regard to "total market value" of the timber unlawfully cut by plaintiffs. When timber is unlawfully cut the claimant is entitled to either the difference in fair market value of the land before and after the cutting or the market value of the timber at the time and place of its severance plus incidental damages caused in removal, whichever he elects. See *Andrews v. Bruton,* 242 N.C. 93, 86 S.E. 2d 786 (1955) ; *Williams v. Lumber Co.,* 154 N.C. 306, 70 S.E. 631 (1911) ; and *Jones v. Georgia-Pacific Corp.,* 15 N.C. App. 515, 190 S.E. 2d 422 (1972). The findings, therefore, like those relating to the crops do no disclose on what basis the damages were computed and hence are insufficient to support the award.

[6]  Finally, it was found that the referee's conclusions with regard to the true location of the boundary line, which conclusions were adopted by the trial court in its judgment, depended completely on a reference to a map described as "Defendants' Exhibit A." However, Defendant's Exhibit A, which was filed with this court on appeal, reveals only distances and corners marked respectively (A), (B), (C), (D), (E), (F), and (I).

It contains no courses, nor does it contain a sufficient description by reference to monuments; as such, there is some uncertainty from the description in the judgment and its reference to the map as to the exact location of the boundary line. G.S. 38-3 (c) provides that when final judgment is given in a processioning proceeding, a survey shall be ordered by the court so that the line or lines may be run and marked. The surveyor is to include a map of the line to be filed with the judgment.

These are the only assignments of error properly brought forward for review. Therefore, for the reasons stated above, the cause is remanded for further hearings, if required, and for findings, not inconsistent with this opinion, on the question of damages to crops and timber and for compliance with G.S. 38-3 (c) so that the location of the true boundary line may be properly established. In all other respects, the judgment below is affirmed.

Affirmed in part.

Remanded in part.

Judges MARTIN and ARNOLD concur.